

**FILED**
9/18/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AXK

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROOSEVELT GARRETT,<br>TORIENCE GARRETT, and<br>FRANKLIN SIMMONS | No. 1:25-cr-00587<br>Judge Sharon Johnson Coleman<br>Magistrate Judge Gabriel A. Fuentes<br>RANDOM / Cat. 2<br>Violations: Title 18, United States Code, Sections 1341, 1343, and 1957; Title 26, United States Code, Sections 7203 and 7206(1)<br><br>**UNDER SEAL** |

## COUNTS ONE THROUGH THREE

The SPECIAL JUNE 2024 GRAND JURY charges:

1.     At times material to this indictment:

### *Individuals and Entities*

a.     Block, Inc, d/b/a "Square", was a financial services and mobile payment company headquartered in San Francisco, California. Square provided, among other services, merchant accounts that allowed business owners to process credit card transactions from their customers.

b.     Defendants ROOSEVELT GARRETT and TORIENCE GARRETT had registered with the Illinois Secretary of State an entity called "Lake Star Construction Co." ("Lake Star"), a corporation organized in the State of Illinois. TORIENCE GARRETT was listed in the registration records as the President of Lake Star, and ROOSEVELT GARRETT was listed as its Secretary. Lake Star held eight bank accounts for which ROOSEVELT GARRETT and TORIENCE GARRETT were the sole signatories (the "Lake Star Accounts"). One of the Lake Star Accounts was a

Chase Bank checking account ending -1028 ("Bank Account A"). Lake Star also held two merchant payment processing accounts used to process credit card transactions.

        c.      Defendants ROOSEVELT GARRETT and TORIENCE GARRETT had registered with the Illinois Secretary of State an entity called "Silverware One LLC" ("Silverware One") a limited liability company organized in the State of Illinois. ROOSEVELT and TORIENCE GARRETT were listed in the registration records as Managers of Silverware One. Silverware One held five bank accounts for which ROOSEVELT and TORIENCE were the sole signatories (the "Silverware One Accounts"). One of the Silverware One Accounts was a Chase Bank checking account ending -2920 ("Bank Account B"). Silverware One also held two merchant payment processing accounts used to process credit card transactions.

        d.      Defendant FRANKLIN SIMMONS controlled what purported to be a sole proprietorship d/b/a "Frank Cleaning Service" or "Frank's Cleaning Service." Frank Cleaning Service held a Square merchant payment processing account used to process credit card transactions ("Merchant Account A"). SIMMONS also held a bank account for which SIMMONS was the sole signatory that was linked to Merchant Account A and into which funds were transferred from Merchant Account A.

        e.      Until the time of Victim J.N.'s death on or about June 14, 2020, Victim J.N. was a resident of Michigan.

        f.      Until the time of Victim R.H.'s death on or about November 22, 2020, Victim R.H. was a resident of Illinois.

2

g.     Until the time of Victim M.S.'s death on or about May 10, 2018, Victim M.S. was a resident of Illinois.

### *The Scheme to Defraud*

2.     Beginning no later than in or around January 2018, and continuing through at least in or around November 2021, in the Northern District of Illinois, and elsewhere,

ROOSEVELT GARRETT,
TORIENCE GARRETT, and
FRANKLIN SIMMONS,

defendants herein, together with others known and unknown to the Grand Jury, knowingly devised, intended to devise, and participated in a scheme to defraud credit card companies, and to obtain their money and property, by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

3.     It was part of the scheme that defendants researched information about recently deceased individuals (collectively, the "Individual Victims") and obtained their personally identifying information.

4.     It was further part of the scheme that defendants submitted to financial institutions (the "Institutional Victims") applications for credit cards in the names of the Individual Victims.

5.     It was further part of the scheme that, once defendants were in possession of credit cards opened in the names of the Individual Victims (the

3

"Fraudulent Cards"), defendants incurred charges on the Fraudulent Cards at purported businesses that defendants controlled, including "Lake Star Construction," "Silverware One," "Frank Cleaning Service," "Fleming Plumbing Services," "TR Roofing," "Henry Building Materials," "Junk Time Removal," "Gee's Building and Supply," and "Tony's Home Goods." Some of the merchant accounts used to process credit card transactions for these purported entities were linked to one of the Lake Star Accounts.

6.      It was further part of the scheme that defendants controlled the bank accounts of these purported businesses and had the proceeds of the fraudulent transactions deposited into these accounts.

7.      It was further part of the scheme that defendants used some of the fraudulently obtained credit cards in the names of Individual Victims to make purchases at retailers for their personal benefit.

8.      It was further part of the scheme that defendants did not repay the Institutional Victims in full for the fraudulent charges they incurred on the credit cards.

9.      It was further part of the scheme that defendants misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

10.      On or about the dates set forth below, in the Northern District of Illinois, Eastern Division, and elsewhere, defendants ROOSEVELT GARRETT,

4

TORIENCE GARRETT, and FRANKLIN SIMMONS, as set forth below, for the purposes of executing the above-described scheme, knowingly caused to be delivered by U.S. mail certain credit cards listed below, each such mailing constituting a separate count:

| Count | On or about Date | Description of Act |
|-------|------------------|--------------------|
| One | June 12, 2018 | A mail parcel containing a Citibank credit card ending -6483 in the name of Victim M.S. |
| Two | June 29, 2020 | A mail parcel containing a Citibank credit card ending -4563 in the name of Victim J.N. |
| Three | December 4, 2020 | A mail parcel containing a Citibank credit card ending -4821 in the name of Victim R.H.; |

In violation of Title 18, United States Code, Section 1341.

## COUNTS FOUR THROUGH SIX

The SPECIAL JUNE 2024 GRAND JURY further charges:

1.     Paragraphs 1 through 9 of Counts One through Three are incorporated here.

2.     On or about the dates set forth below, in the Northern District of Illinois, Eastern Division, and elsewhere, defendants ROOSEVELT GARRETT, TORIENCE GARRETT, and FRANKLIN SIMMONS, as set forth below, for the purposes of executing the above-described scheme, knowingly cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, listed below, each such writing, sign, and signal constituting a separate count:

| Count | On or about date | Description of Act |
|---|---|---|
| Four | June 24, 2018 | A credit card payment to Square account "TR Roofing" from a Citibank credit card ending -6483 in the name of Victim M.S. in the amount of approximately $2,776. |
| Five | July 9, 2020 | A credit card payment to Merchant Account A from a Citibank card ending -4563 in the name of Victim J.N. in the amount of approximately $1,305. |
| Six | December 18, 2020 | A credit card payment to merchant account "Silverware One" from a Citibank credit card ending -4821 in the name of Victim R.H. in the amount of approximately $975. |

In violation of Title 18, United States Code, Section 1343.

6

## COUNTS SEVEN THROUGH EIGHT

The SPECIAL JUNE 2024 GRAND JURY further charges:

1.      Paragraph 1 of Counts One through Three is incorporated here.

2.      At all times material to this indictment:

a.      The U.S. Small Business Administration ("SBA") was a United States government agency that provided economic support to small businesses.

b.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

c.      One source of relief provided by the CARES Act and other pandemic-relief legislation was the expansion of the Economic Injury Disaster Loan ("EIDL") Program, which provided loan assistance (including advances of up to $10,000) for businesses with 500 or fewer employees and other eligible entities. The EIDL Program was designed to provide economic relief to small businesses that were experiencing a temporary loss of revenue.

d.      To gain access to funds through the EIDL Program, small businesses applied through the SBA via an online portal and application. As part of the EIDL application process, the SBA required applicants to submit truthful information about the applying entity, its owner, and its financial condition prior to the COVID-19 pandemic. This information included the entity's number of employees

7

as of January 31, 2020; the entity's gross revenues and cost of goods sold for the 12-month period prior to January 31, 2020; and the entity's type and activity of business (i.e., whether it is an LLC, partnership, or another structure, and whether it is an agricultural business, a retail business, among others); the date on which the business opened; and the date on which the current owner assumed ownership of the entity. Applicants were required to electronically certify that the information provided in the application was true and correct and were warned that a false statement or misrepresentation to the SBA may result in sanctions, including criminal penalties.

e.     EIDL funds were issued to small-business applicants directly from the United States Treasury.

f.     EIDL Advance was a grant program offered together with the EIDL Program. EIDL Advance was designed to provide emergency economic relief to businesses that were experiencing a temporary loss of revenue as a result of the COVID-19 pandemic. The applicant could request consideration for an EIDL advance in an application for an EIDL loan. The amount of the advance issued to the small-business applicant was determined by the number of employees indicated on the EIDL application, at $1,000 per employee, up to $10,000. If an EIDL advance was issued, the advance did not need to be repaid.

g.     If an EIDL application was approved by the SBA, the amount of the EIDL loan was determined in part based on the statements in the EIDL

application about the entity's revenues and cost of goods sold for the 12 months prior to January 31, 2020.

h.    EIDL Program funds could be used to pay for the ordinary operating expenses and debts of the entity, including payroll, sick leave, production costs, utilities, rent, mortgage payments, continuation of health care benefits, and fixed debt payments.

3.    Beginning no later than in or around April 2020, and continuing through at least in or around July 2021, in the Northern District of Illinois, and elsewhere,

ROOSEVELT GARRETT and
TORIENCE GARRETT,

defendants herein, together with others known and unknown to the Grand Jury, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property, in connection with applications for EIDL funds, by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

4.    It was part of the scheme that ROOSEVELT GARRETT and TORIENCE GARRETT (together, the "Garrett Defendants"), for the purpose of fraudulently obtaining EIDL funds, submitted approximately two applications for loans and advances under the EIDL Program, on behalf of businesses and entities purportedly owned and operated by the Garrett Defendants, including Lake Star and Silverware One, which applications contained materially false statements and misrepresentations concerning, among other things, the purported entities' number

9

of employees and gross revenues.

5.     It was further part of the scheme that the Garrett Defendants prepared, and submitted to the SBA, two applications for EIDL loans and advances on behalf of Lake Star and Silverware One (collectively, the "Fictitious Entities"), in which applications they made false statements, including regarding the entities' gross revenues and costs of goods sold for the 12 months prior to January 31, 2020 and the number of employees employed by those entities as of January 31, 2020. The Garrett Defendants knew at the time that the Fictitious Entities were not operating companies in 2020 or 2021, had no employees and did not have the revenues stated in the applications.

6.     It was further part of the scheme that the Garrett Defendants controlled business bank accounts in the names of the Fictitious Entities and directed the SBA to deposit the proceeds of fraudulently obtained EIDL loans into those bank accounts, including Bank Account A and Bank Account B.

7.     It was further part of the scheme that the Garrett Defendants used the EIDL funds obtained through their submission of fraudulent EIDL applications to make cash withdrawals and transfers for their personal use and benefit and not for purposes related to the business of the entities.

8.     It was further part of the scheme that the Garrett Defendants misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence and purpose of the scheme and the acts done in furtherance of

the scheme.

9.     On or about the dates set forth below, in the Northern District of Illinois, Eastern Division, and elsewhere, ROOSEVELT GARRETT and TORIENCE GARRETT, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, listed below, each such writing, sign, and signal constituting a separate count:

| Count | Date | Description of Act |
|---|---|---|
| Seven | June 24, 2020 | an internet transmission of an EIDL loan application on behalf of Lake Star Construction Co., through an SBA server located outside of Illinois |
| Eight | June 24, 2020 | an internet transmission of an EIDL loan application on behalf of Silverware One LLC, through an SBA server located outside of Illinois |

In violation of Title 18, United States Code, Section 1343.

11

## COUNT NINE

The SPECIAL JUNE 2024 GRAND JURY further charges:

On or about October 15, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

TORIENCE GARRETT,

defendant herein, knowingly engaged in a monetary transaction, namely, the deposit of a cashier's check in the amount of approximately $41,000 from Bank Account A to Bank Account B, which transfer was in and affecting interstate commerce and involving criminally derived property of value greater than $10,000, such property having been derived from a specified unlawful activity, namely wire fraud, in violation of Title 18, United States Code, Section 1343;

In violation of Title 18, United States Code, Section 1957.

## COUNTS TEN THROUGH THIRTEEN

The SPECIAL JUNE 2024 GRAND JURY further charges:

1.      At all times material to this Indictment:

a.      The Internal Revenue Service was part of the United States Department of the Treasury and, among other things, was responsible for administering the tax laws of the United States and collecting taxes from individuals and entities.

b.      Individuals were required to file an annual United States Individual Income Tax Return, Form 1040, with schedules and attachments, if their gross income exceeded certain specified amounts, with the Internal Revenue Service, due by a date certain in the following year.

c.      Employers were required to file Form 941, Employer's Federal Tax Return, to report wages paid and tips reported by employees, as well as employment taxes, unless a business has been notified by the IRS that another form is authorized.

2.      On or about December 15, 2022, in the Northern District of Illinois, Eastern Division, and elsewhere,

TORIENCE GARRETT,

defendant herein, willfully made and subscribed, and caused to be made and subscribed, quarterly IRS Form 941 (Employer's Quarterly Federal Tax Return) returns for the calendar year 2021 for a business identified as Lake Star Construction

13

Co., which returns were verified by a written declaration that they were made under penalties of perjury, and filed with the Internal Revenue Service, which returns defendant did not believe to be true and correct as to every material matter, each such return constituting a separate count:

| Count | Tax Period | Description of Act |
|---|---|---|
| Ten | Q1 2021 | a false statement on lines 1 and 2 that Lake Star Construction Co. had 8 employees to whom it had paid $37,995.99 in wages in the first quarter of 2021. |
| Eleven | Q2 2021 | a false statement on lines 1 and 2 that Lake Star Construction Co. had 8 employees to whom it had paid $37,995.99 in wages in the second quarter of 2021. |
| Twelve | Q3 2021 | a false statement on lines 1 and 2 that Lake Star Construction Co. had 8 employees to whom it had paid $37,995.99 in wages in the third quarter of 2021. |
| Thirteen | Q4 2021 | on Lines 1 and 2 that Lake Star Construction Co. had 7 employees to whom it had paid $31,655.87 in the fourth quarter of 2021. |

In violation of Title 26, United States Code, Section 7206(1).

## COUNTS FOURTEEN THROUGH SEVENTEEN

The SPECIAL JUNE 2024 GRAND JURY further charges:

1.      Paragraph 1 of Counts Ten through Thirteen is incorporated here.

2.      On or about December 15, 2022, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROOSEVELT GARRETT,

defendant herein, willfully made and subscribed, and caused to be made and subscribed, quarterly IRS Form 941 (Employer's Quarterly Federal Tax Return) returns for the calendar year 2021 for a business identified as Silverware One LLC, which returns were verified by a written declaration that they were made under penalties of perjury, and filed with the Internal Revenue Service, which returns defendant did not believe to be true and correct as to every material matter, each such return constituting a separate count:

| Count | Tax Period | Description of Act |
|---|---|---|
| Fourteen | Q1 2021 | a false statement on lines 1 and 2 that Silverware One LLC had 7 employees to whom it had paid $32,550.00 in wages in the first quarter of 2021. |
| Fifteen | Q2 2021 | a false statement on lines 1 and 2 that Silverware One LLC had 7 employees to whom it had paid $32,550.00 in wages in the second quarter of 2021. |
| Sixteen | Q3 2021 | a false statement on lines 1 and 2 that Silverware One LLC had 7 employees to whom it had paid $32,550.00 in wages in the third quarter of 2021. |
| Seventeen | Q4 2021 | a false statement on lines 1 and 2 that Silverware One LLC had 7 employees to whom it had paid $32,550.00 in wages in the fourth quarter of 2021. |

In violation of Title 26, United States Code, Section 7206(1).

15

## **COUNT EIGHTEEN**

1.      Paragraph 1 of Counts Ten through Thirteen is incorporated here.

2.      On or about May 16, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

FRANKLIN SIMMONS,

defendant herein, willfully made and subscribed, and caused to be made and subscribed, a United States Individual Income Tax Return (Form 1040 with schedules and attachments) for the calendar year 2019, which return was verified by a written declaration that it was made under penalties of perjury, and filed with the Internal Revenue Service, which return defendant did not believe to be true and correct as to every material matter, in that the return falsely stated on line 7b that defendant's total income was $33,983, when defendant knew and believed that the amount of total income substantially exceeded that amount;

In violation of Title 26, United States Code, Section 7206(1).

16

## **COUNT NINETEEN**

The SPECIAL JUNE 2024 GRAND JURY further charges:

1.      Paragraph 1 of Counts Ten through Thirteen is incorporated here.

2.      On or about June 20, 2023, in the Northern District of Illinois, Eastern Division, and elsewhere,

FRANKLIN SIMMONS,

defendant herein, willfully made and subscribed, and caused to be made and subscribed, a United States Individual Income Tax Return (Form 1040 with schedules and attachments) for the calendar year 2020, which return was verified by a written declaration that it was made under penalties of perjury, and filed with the Internal Revenue Service, which return defendant did not believe to be true and correct as to every material matter, in that the return falsely stated on line 9 that defendant's total income was $36,186, when defendant knew and believed that the amount of total income substantially exceeded that amount;

In violation of Title 26, United States Code, Section 7206(1).

## **COUNT TWENTY**

1.      Paragraph 1 of Counts Ten through Thirteen is incorporated here.

2.      During the calendar year 2019, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROOSEVELT GARRETT,

defendant herein, who was a resident of Aurora, Illinois, had and received gross income in excess of $12,200. By reason of such gross income, he was required by law, following the close of the calendar year 2019 and on or before July 15, 2020, to make an income tax return to the Internal Revenue Service, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Knowing the foregoing, defendant did willfully fail, on or about July 15, 2020, to make an income tax return;

In violation of Title 26, United States Code, Section 7203.

## **FORFEITURE ALLEGATION**

The SPECIAL JUNE 2024 GRAND JURY further alleges:

1.      Upon conviction of an offense in violation of Title 18, United States Code, Sections 1341, 1343 and 1957, as set forth in this Indictment, defendants shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), and any property involved in such offense, and any property traceable to such property, as provided in Title 18, United States Code, Section 982(a)(1).

2.      The property to be forfeited includes, but is not limited to, a personal money judgment.

3.      If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the

19

United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

_____

FOREPERSON

_____
Signed by Andrew C. Erskine, on behalf of the
UNITED STATES ATTORNEY